780 F.2d 1022
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
EDWARD E. PELLEAU, Plaintiff-Appellant
vs.
SECRETARY OF HEALTH AND HUMAN SERVICES. Defendant-Appellee.
 84-3734
 United States Court of Appeals, Sixth Circuit.
 11/21/85
 
 REVERSED AND REMANDED
 N.D.Ohio
 On Appeal from the United States District Court for the Northern District of Ohio
 BEFORE: KEITH, KENNEDY and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant, Edward E. Pelleau, appeals from a district court order granting summary judgment to the appellee, Secretary of Health and Human Services. Appellant filed an application for a period of disability and social security disability benefits on May 25, 1980, alleging that he became unable to work on November 20, 1979 due to epilepsy. The application was denied initially and on reconsideration. After a hearing de novo, the Administrative Law Judge ('ALJ') found that appellant was not disabled. The ALJ's decision was affirmed by the Appeals Council. The district court affirmed the Secretary's decision by adopting the Magistrate's recommended findings and conclusions that the Secretary's motion for summary judgment be granted. On appeal, appellant argues that the Secretary failed to apply the proper burden of proof, that the Secretary failed to apply the appropriate legal standards and that the Secretary's decision is not supported by substantial evidence. For the reasons set forth below, we remand this case to the ALJ for completion of the sequential evaluation process provided in 20 C.F.R. Sec. 404.1520 (1985).
 
 I.
 
 2
 Appellant, Edward E. Pelleau, has had a seizure disorder since 1953. By 1979, when he stopped working, appellant was experiencing seizures at least once a week and as frequently as twice daily. Appellant had been employed as a truck driver with various companies from 1962 until October 24, 1980. In July of 1976, he consulted Dr. Edward W. Shannon regarding his seizures and was prescribed medication. Thereafter, he was not examined by Dr. Shannon again until July 16, 1980, after appellant was denied disability benefits. Appellant alleged in his application that he became disabled on November 20, 1979. This is the same time at which Mr. Pelleau was laid off from work. He was subsequently called back to work in October 1980. Approximately one week after returning to work, Mr. Pelleau was involved in a truck accident wherein the truck he was driving ran into a bridge overpass. He has complained of 'medium' neck and back pains resulting from the accident. On July 1, 1981 appellant suffered a heart attack which resulted in double by-pass surgery on July 8, 1981. Although his recovery was fairly normal, appellant complained of shortness of breath and fatigue as a result of his heart problems. Appellant also claims he suffers from emphysema.
 
 
 3
 Appellant has been examined by numerous physicians. Dr. Shannon saw him on July 16, 1980 and diagnosed the problem as grand mal seizures. An electroencephalogram that day was abnormal; however, the next day the results of another electroencephalogram were within normal limits. Dr. Franklin D. Krause, a physician for the Bureau of Disability Determination, ran lab tests on appellant on November 7, 1980 which showed the level of Dilantin to be at the lowest level able to produce the desired activity. Dr. Gerald Steinman, a neurologist and State Agency review physician, stated that Mr. Pelleau had generalized grand mal but felt it was not severe. Another physician, Dr. Caluya of the St. Clair Clinic, examined appellant and observed that there was stiffness of motion, tenderness, weakness of grip, and pain. However, in November 1981, Dr. Krause found Mr. Pelleau's deep tendon reflexes to be normal. There was no atrophy and straight leg raising was accomplished to 80 and 70 degrees. Further, neurological examinations during appellant's hospitalization in July 1981 were normal.
 
 
 4
 Appellant has also been examined by physicians since his heart surgery. Two months after his open heart surgery, Dr. E.A. Husni, his heart surgeon, stated that appellant was completely disabled while recuperating from open heart surgery. However, a subsequent report of Dr. Franklin D. Krause, dated November 5, 1981, found that there was little residual disability from the open heart surgery.
 
 
 5
 Appellant claimed at the hearing that he is unable to lift, bend, climb, walk, stand or even sit for any appreciable time without experiencing debilitating pain. However, other evidence admitted at the administrative hearing indicated that appellant is able to do yard work, sweep, dust, and paint landscapes and portraits. He is also able to feed and dress himself, go to physical therapy every week, and take daily walks.
 
 
 6
 Consequently, the ALJ made the following findings:
 
 
 7
 The claimaint's allegations of constant pain, frequent seizures and other symptoms and limitations are not fully supported by the objective clinical findings and other evidence and are not considered to be credible.
 
 
 8
 The claimant does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions; therefore, the claimant does not have a severe impairment.
 
 
 9
 (Transcript at 14). The ALJ's decision became the final decision of the Secretary when the Appeals Council approved that decision on March 24, 1981. The district court adopted the Magistrate's recommended findings and conclusions that the Secretary's motion for summary judgment be granted. The district court's decision sustained the final determination of the Secretary of Health and Human Services which denied appellant's claim under 42 U.S.C. Sec. 416(i) and 423(d).
 
 II.
 
 10
 This Court's scope of review is limited to a determination of whether the Secretary's findings are supported by substantial evidence. Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 11
 The Social Security Administration has promulgated 20 C.F.R. Sec. 404.1520 (1985), which establishes a five-step sequential process for evaluating claims for social security disability insurance benefits. Under the first step, the Secretary determines whether a claimant currently engages in substantial gainful activity. If so, the claimant does not qualify as disabled. Second, the Secretary examines the severity of the claimant's impairment or impairments. If the claimant does not have a severe impairment or impairments, the claimant cannot qualify as disabled. Title 20 C.F.R. Sec. 404.1521(a) defines a non-severe impairment as an impairment or combination of impairments that does not significantly limit a claimant's physical or mental ability to perform the basic work activities described in 20 C.F.R. Sec. 404.1521(b). Third, the Secretary compares the claimant's impairment or impairments to the 'Listing of Impairments' in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. The Secretary will find the claimant disabled if Appendix 1 lists the claimant's impairment(s), or the claimant's impairment(s) qualify as the medical equivalent of a listed impairment. Fourth, if the claimant's impairment or impairments do not meet or equal a listed impairment, the Secretary next determines whether the claimant can perform the claimant's past work. If so, the claimant does not qualify as disabled. Finally, if the claimant cannot perform past work, the Secretary considers the claimant's residual functional capacity and the transferability of any skills the claimant may possess to determine whether the claimant qualifies as disabled. Cf. Salmi v. Secretary of Health and Human Services, No. 85-1073, slip op. at 5-6 (6th Cir. Sept. 19, 1985) (claim for supplemental security income benefits).
 
 
 12
 In the present case, the ALJ found that since '[t]he claimant does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions[,] . . . the claimant does not have a severe impairment.' Accordingly the ALJ terminated the sequential evaluation proces at the second step. In Salmi v. Secretary of Health and Human Services, supra at 12, this Court held that 'an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.' Dr. Shannon diagnosed appellant's condition as grand mal seizures. Appendix at 154. Although Dr. Steinman concluded that appellant did not suffer from a severe impairment, he acknowledged that appellant has 'generalized grand mal seizures.' Id. at 159. The Secretary, accordingly, does not contest the diagnosis that appellant suffers from grand mal seizures. Grand mal seizures certainly affect a claimant's ability to perform the 20 C.F.R. Sec. 404.1521(b)(1) basic work activities of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. Consequently, appellant's grand mal seizures qualify as a severe impairment under the second step of the sequential evaluation process. Therefore, substantial evidence does not support the Secretary's finding that appellant does not suffer from a severe impairment. Accordingly, we reverse the District Court order granting the Secretary's motion for summary judgment and remand the case to the District Court with instructions to remand the case to the Secretary for completion of the sequential evaluation process.